SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :
CYNTHIA RAMOS, et al.,                      :
                          Plaintiffs,    :
                                                   :
                  -against-            :
                                                     :
DAVID C. BANKS, et al.,                   :
                         Defendants. :
------------------------------------------------------------ X
                                                 :          24 Civ. 5109 (LGS)
OLIVER BRUCKAUF, et al.,                :          24 Civ. 5136 (LGS)
                                                 :
                          Plaintiffs,    :        **OPINION & ORDER**
                                                 :
                  -against-            :
                                                     :
DAVID C. BANKS, et al.,                   :
                                                 :
                         Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs are parents and natural guardians of fourteen Student-Plaintiffs with disabilities. Plaintiffs, on behalf of Student-Plaintiffs and individually, bring two actions against David C. Banks, in his official capacity as Chancellor of the New York City Department of Education ("DOE"), and DOE (collectively, "Defendants"), alleging various violations of the Student-Plaintiff's rights under the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983, Fourteenth Amendment of the U.S. Constitution, New York Education Law, and the Education Article of the New York State Constitution. Pending before this Court are Defendants' partial motions to dismiss[1] and two sets of Plaintiffs' preliminary injunction motions

---

[1] Defendants' motions to dismiss do not address V.G. or W.R.'s claims for DOE's alleged failure to provide transportation services.

in both cases.  For the following reasons, the Amended Complaints are dismissed with leave to amend certain claims, and the preliminary injunction motions are denied.

## I.    BACKGROUND

### A.    Legal Framework

The IDEA requires states receiving federal funding to provide children with disabilities with a free appropriate public education ("FAPE") through the creation of an individualized education program ("IEP").  20 U.S.C. §§ 1400(d)(1)(A); 1414(d).  To challenge the adequacy of a child's IEP in New York, the parent can file a Due Process Complaint ("DPC") and be heard by an Impartial Hearing Officer ("IHO").  *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023).  The IHO's order can be appealed to a State Review Officer ("SRO").  *Id.*  After the state administrative process is complete, either party may seek review of the SRO's decision in federal or state court.  *Id.*

The IDEA contains a "stay-put" provision, which allows a child to stay in "the then-current educational placement" at public expense "during the pendency of any proceedings."  20 U.S.C. § 1415(j); *Mendez*, 65 F.4th at 59, 61.  It requires a school district to fund the last agreed-upon educational placement until the relevant FAPE proceedings are complete.  *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014);[2] *accord Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).  It "does not guarantee" a child "the right to remain in the exact same school with the exact same service providers" during pendency, but only "the same general level and type of services" that the child was receiving. *T.M.*, 752 F.3d at 171; *Ventura*, 959 F.3d at 532.

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

Whether the school the child attends (and the service providers the child uses, if applicable) is the child's last agreed-upon placement may be in dispute. In that case, a parent may apply for a pendency order, which determines whether the child's school and/or service providers are a proper placement during the pendency of the concurrent FAPE challenge. *See, e.g.*, *Mendez*, 65 F.4th at 59-60 (stating that parents unilaterally enrolling their children in iBRAIN applied for and obtained pendency orders). If so, DOE is obliged to fund that placement "during the pendency of the underlying FAPE proceedings," *id.* at 61, regardless of the outcome of those proceedings, *Ventura*, 959 F.3d at 531.

### B.    Factual Background

The facts below are taken from the Amended Complaints and the documents they incorporate by reference. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). These facts are assumed to be true for deciding the motions to dismiss and are construed in the light most favorable to Plaintiffs as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022). To resolve jurisdictional issues, additional facts are taken from the parties' sworn submissions and exhibits. *See Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986); *accord Vasquez on behalf of J.V. v. New York City Dep't of Educ.*, No. 22 Civ. 3360, 2024 WL 1332822, at *4 (S.D.N.Y. Mar. 28, 2024).

Plaintiffs are parents and natural guardians of fourteen Student-Plaintiffs with disabilities who attend a private school called iBRAIN.[3] On July 2, 2024, each Parent-Plaintiff initiated the administrative process by filing their respective DPC, alleging that DOE failed to offer their child a FAPE for the 2024-25 school year. The next day, Plaintiffs filed *Ramos et al. v. Banks et al.* ("*Ramos*") in this Court, and within a week, *Bruckauf et al. v. Banks et al.* ("*Bruckauf*") as

---

[3] Plaintiff Jennie Landsman, individually and as parent and natural guardian of the child J.L., voluntarily dismissed her claim on October 25, 2024.

well.  On July 16, 2024, Plaintiffs filed proposed orders to show cause with emergency relief in both cases.  After a show cause hearing on the next day, the Court denied emergency injunctive relief in both cases on August 1, 2024, for Plaintiffs' failure to show irreparable harm, a necessary element for injunctive relief.

On August 16, 2024, Plaintiffs filed another proposed order to show cause with emergency relief in *Ramos*, and three days later, a motion for preliminary injunction in *Bruckauf*. After a conference held on September 3, 2024, the Court directed Plaintiffs to file amended complaints in both cases and held the motions in abeyance pending Defendants' upcoming motions to dismiss.  On September 19, 2024, Plaintiffs filed Amended Complaints in both cases. On October 4, 2024, Defendants filed their motions to dismiss in both cases, which became fully briefed on November 8, 2024.  In the interim, Plaintiffs filed another motion for preliminary injunction in *Ramos* on October 18, 2024, and in *Bruckauf* on October 23, 2024, which became fully briefed on November 21 and November 13, 2024, respectively.  The parties subsequently also filed letter updates regarding the current status of each Student-Plaintiff's administrative case and DOE payment.

## II.    STANDARD

### A.    Motion to Dismiss

#### 1.    Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016); *accord Manning v. City of New York*, No. 23 Civ. 2352, 2024 WL 3480437, at *2 (S.D.N.Y. July 19, 2024).  But when "jurisdictional facts are placed in dispute" the court must "decide issues of fact

by reference to evidence outside the pleadings." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022); *accord Manning*, 2024 WL 3480437, at *2. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain*, 838 F.3d at 134. Because a federal court can only adjudicate cases and controversies under Article III, Section 2 of the United States Constitution, it must assure that it has subject matter jurisdiction before adjudicating the merits and may raise the Article III issues *sua sponte* at any time. *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

A federal court cannot adjudicate cases that become moot, because its jurisdiction is limited to cases where the "litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022). A federal court must dismiss the case when the redressable injury ceases to exist, and when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* "The exceptions to the mootness doctrine include voluntary cessation cases and cases capable of repetition but evading review." *Srour v. New York City*, 117 F.4th 72, 81 (2d Cir. 2024).

A federal court can also only adjudicate ripe disputes that "present a real, substantial controversy, not a mere hypothetical question." *Cotton v. Noeth*, 96 F.4th 249, 256 (2d Cir. 2024). "A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mendez*, 65 F.4th at 60. "The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.*

**2.      Rule 12(b)(6)**

Under Rule 12(b)(6), a court "accept[s] as true all well-pleaded factual allegations, draw[s] all reasonable inferences in the plaintiff's favor, and assess[es] the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024).

**B.      Motion for Preliminary Injunction**

"To obtain a preliminary injunction, a party must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024).

In the pendency context, the stay-put provision grants "an automatic preliminary injunction" as to the child's right to "maintain an educational placement" during the pendency and ultimately funding to support this right. *Mendez*, 65 F.4th at 62-63. This automatic injunction does not demand immediate payment, unless the parents "establish that a delay or failure to pay has jeopardized their child's educational placement." *Id.* at 63.

**III.      DISCUSSION**

The Amended Complaint seeks (1) a declaration that iBRAIN is the Student-Plaintiffs' pendency placement for 2024-2025 School Year, (2) an injunction that DOE eliminate the requirement for a pendency order, (3) an order that DOE pay the tuition, transportation, nursing and related services "in ordinary course of business without undue delay" and (4) attorney's fees. The preliminary injunction motions ask for immediate or expedited payment. For the reasons

below, the Amended Complaints are dismissed with leave to amend, and the preliminary

injunction motions are denied.

**A.        Defendant's Motions to Dismiss**

**1.        Rule 12(b)(1): Subject Matter Jurisdiction**

The current status of Plaintiffs' administrative cases and payment by DOE varies.  As of

March 28, 2025, the date of the parties' most recent joint update, the status is as follows:

*Category I*.  Three students, C.B., D.O. and J.A-B., have received pendency orders.  DOE

has paid their balances in full;[4]

*Category II*.  Three students, E.B., H.C. and S.C., have received pendency orders.  DOE

is disbursing payments and has paid most of their balances;

*Category III*.  Five students, R.P., W.R., J.B., V.G. and R.L. have received pendency

orders.  DOE is disbursing payments and has paid most of their tuition balances.  For R.P. and

J.B., DOE is waiting for their attendance records.  For W.R., V.G. and R.L., DOE disputes

whether it must reimburse transportation or nursing services;

*Category IV*.  Two students, L.S. and E.D-R., have received pendency orders on

December 20, 2024.  DOE has not paid;

*Category V*.  One student, Z.C., has not received a pendency order.  DOE has not paid.

If one student has moved from one category to another since March 28, 2025, the

reasoning applicable to the latter category will apply.

---

[4] The only remaining dispute appears to be over DOE's obligation to pay late fees stated in
iBRAIN's contracts with the parents.  The Amended Complaints do not seek or otherwise
mention late fees.

###### a.    Moot Claims

Most claims asserted by the students are moot.  The claims by the students in Categories I, II, III and IV for the pendency declarations and injunctions are moot because the students have received their pendency orders.  The claims by the students in Categories I, II and III for uncontested payment in due course are also moot because DOE has paid all or most of those balances.  Regarding these claims, the students "do not qualify as prevailing parties eligible for attorney's fees" because the claims became moot.  *Lackey v. Stinnie*, 145 S. Ct. 659, 671 (2025). The remaining claims are only (1) pendency declaration claims of students in Category V and (2) outstanding payment claims of students in Categories III, IV and V.

Plaintiffs argue that the moot claims should nonetheless be addressed because (1) DOE's delay of payment is capable of repetition yet escaping review and (2) DOE's payment is a voluntary cessation that does not moot the claims.  The argument is unavailing.  For the capable-of-repetition exception to mootness to apply, "(1) the plaintiff must have a reasonable expectation that it will be subject to the same challenged action again, and (2) the challenged conduct must be of too short a duration to be fully litigated before its cessation." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022).  DOE's full or substantial payment belies Plaintiffs' assertion of delay.  Under the voluntary-cessation doctrine, "[a]n alleged wrongdoer's voluntary cessation of a disputed action will still render a case moot if the wrongdoer can show that (1) there is no reasonable expectation the action will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Srour*, 117 F.4th at 82.  DOE's payment pursuant to the pendency orders has resolved the claims and cured any alleged delay.  *See* Tr. of Proceedings, *Thomas v. Banks*, No. 24 Civ. 5138 (S.D.N.Y. Jan.

28, 2025), ECF No. 68 ("*Thomas* Tr."), 28:4-29:20 (holding as moot the claims of students who have received pendency orders).

> **b.    Unripe Claims**

Several of the remaining claims are unripe.  "A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mendez*, 65 F.4th at 60.  The claims of some Category III students (W.R., V.G. and R.L. as of the last update), for contested payment are unripe because the scope and manner of transportation or nursing services are still being contested in the administrative proceedings.  The extent to which DOE is obligated to pay depends on the outcomes of those proceedings.  The claims of the other Category III students, R.P. and J.B., and one Category IV student, E.D-R., for payment are unripe because DOE is waiting for documentation and may process payment afterward.  The claims of the Category V student, Z.C., for pendency declaration and payment are also unripe because an FOFD is pending in Z.C.'s administrative proceeding, which may address pendency and DOE's obligations.  *See Thomas* Tr. at 30:9-31:5 (holding as unripe the claim for declaratory relief of a student who has not received the pendency order).

The only remaining claims are: (1) the claim of one Category IV student, L.S., for an order that DOE pay the balance; and (2) the claim of the Category V student, Z.C., for an injunction that DOE eliminate the pendency order requirement.

L.S.'s claim for payment is ripe because the December 20, 2024, FOFD ordered DOE to L.S.'s pendency placement, which DOE did not contest.  This claim thus "depends on an allegedly unmet existing obligation" and is ripe for review.  *Mendez*, 65 F.4th at 62.

Z.C.'s claim for an injunction to dispense with the pendency-order requirement is also ripe.  The Amended Complaints seek to "eliminate any requirement that compels the Parent-

Plaintiffs to wait months in violation of the IDEA to obtain an 'interim order' from an [IHO] or accept a pendency form/agreement from the DOE."  Z.C. is not required to wait for the pendency order to be issued -- which would moot this claim -- to challenge DOE's practice of payment.

### 2.    Rule 12(b)(6): Failure to State a Claim

The Amended Complaints allege violations of Plaintiffs' rights under the IDEA, 42 U.S.C § 1983, the Fourteenth Amendment of the U.S. Constitution, New York Education Law and the New York State Constitution.  As applied to the justiciable claims and construed most favorably to Plaintiffs as the non-moving parties, the Amended Complaints assert that (1) DOE violated L.S.'s right under the IDEA to pendency funding by failing to pay in due course; (2) DOE violated Z.C.'s right under the IDEA by delaying payment until after pendency determinations; and (3) these violations also give rise to (a) independent 42 U.S.C. § 1983 claims and (b) constitutional claims pursuant to (i) the Due Process Clause of the Fourteenth Amendment and (ii) the Education Clause of the New York State Constitution.[5]  For the reasons below, the Amended Complaints do not adequately state these claims for the relief requested.

### a.    Violation of the IDEA, as to L.S.

The Amended Complaints do not adequately allege that DOE's failure to pay L.S.'s balance violates IDEA.  A December 20, 2024, SRO decision ordered DOE to fund tuition, transportation, nursing and related services for the pendency of L.S.'s administrative proceeding. On February 2, 2025, Defendants stated that Plaintiffs submitted their documentation to an incorrect email address, which Plaintiffs contested.  On March 4, 2025, Plaintiffs' counsel

---

[5] The Amended Complaints also allege (1) violations of the Plaintiffs' right to a FAPE, and other unspecified procedural and due process rights, under the IDEA, (2) Plaintiffs' rights under 42 U.S.C. § 1983 regarding these IDEA violations and (3) Plaintiffs' right to resolution meetings under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) and to a FAPE under the New York Education Law.  These causes of action have no applicability to L.S. and Z.C., the only Student-Plaintiffs with justiciable claims.

submitted the documentation to a corrected email address.  Defendants confirmed receipt of the

documentation and, as of March 28, 2025, were reviewing the documentation.  The IDEA, while

ensuring the students' rights to stay put during pendency, does not impose a statutory deadline

for payment to be made.  The alleged delay since December 20, 2024, when DOE's funding

obligation materialized, is not unreasonable under the "practical realities" of "thousands of

funding requests under the IDEA" that DOE receives.  *Mendez*, 65 F.4th at 63.  Nor do the

Amended Complaints allege that the delay "has jeopardized" L.S.'s educational placement, a

prerequisite to seeking fast-tracked, immediate payment.  *Id.*  The Amended Complaints do not

identify any actual or imminent threat or indicate that L.S. will lose access to education at

iBRAIN and relevant services.  This reasoning would apply to any Student-Plaintiff whose

claims become justiciable after March 28, 2025, with a pendency order or funding decision

issued after December 20, 2024.

> b.    **Violation of the IDEA, as to Z.C.**

The Amended Complaints do not state a claim regarding Z.C.'s request to eliminate the

pendency-order requirement.  The IDEA ensures continuity of the children's placement

throughout pendency by mandating funding, 20 U.S.C. § 1415(j), but does not require states to

pay before the contours of their obligations are finalized through the form of a pendency order.

*See Mendez*, 65 F.4th at 61 ("The DOE must first withhold payments that have actually accrued

before [the p]laintiffs can seek those payments in court."); *Grullon v. Banks*, No. 23 Civ. 5797,

2023 WL 6929542, at *2 (S.D.N.Y. Oct. 19, 2023) ("[U]ntil a pendency determination

confirming a student's placement is issued, DOE is not obligated to fund that student's tuition or

related services.").

The Amended Complaints do not allege an IDEA violation for either L.S. or Z.C. and hence do not state a claim under 42 U.S.C. § 1983 because neither student suffered a deprivation of a federal statutory right. *See Illescas v. Annuci*, No. 21 Civ. 8473, 2024 WL 4882774, at *3 (S.D.N.Y. Nov. 25, 2024) ("[A] Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges.").

### c.    Violation of a Constitutional Right to Education

The Amended Complaints do not allege a violation of a constitutional right to education under the Due Process Clause of the Fourteenth Amendment. Despite education's "fundamental role in maintaining the fabric of our society," it is "not a right granted to individuals by the Constitution." *Plyler v. Doe*, 457 U.S. 202, 221 (1982); *accord T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 84 (2d Cir. 2024). The Supreme Court initially applied "a heightened level of equal protection scrutiny" in *Plyler* and struck down a state law prohibiting public education for children of undocumented immigrants. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 459 (1988) (discussing *Plyler*). The Supreme Court subsequently cabined this heightened review to *Plyler*'s "unique circumstances" -- i.e., when a child has "been penalized by the government for illegal conduct by her parents" -- and applied traditional rational review in other right to education cases. *Kadrmas*, 487 U.S. at 459; *see Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 94 (2d Cir. 2024) ("Where the claimed right is not fundamental, we apply rational basis review, and the government action need only be reasonably related to a legitimate state objective."). Here, rational basis review applies because the Amended Complaints do not allege any *Plyler*-type unique circumstances. Nothing in the record suggests that DOE's payment practices lack a rational relationship with DOE's practical difficulties and prudence in

dispensing taxpayer money.  While the payment delays are unfortunate and potentially detrimental to the quality of the Student-Plaintiffs' education, they do not rise to the level of a constitutional violation.

Nor do the Amended Complaints adequately allege a violation of a New York State Constitutional right to education.  The Education Article of the New York State Constitution requires the State Legislature to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated."  N.Y. Const. art. XI, § 1.  The primary responsibility lies with the State Legislature, and courts will not usurp the decisions regarding the allocation of public funds "absent allegations of gross and glaring inadequacy."  *Aristy-Farer v. State*, 81 N.E.3d 360, 366 (N.Y. 2017).  In *Paynter v. State*, the New York Court of Appeals held that the plaintiffs failed to state an Education Article claim without alleging the State's failure "to provide minimally acceptable educational services."  797 N.E.2d 1225, 1229 (N.Y. 2003).  The same omission here means that the Amended Complaints do not state a New York Constitutional claim.

## B.    Plaintiffs' Motions for Preliminary Injunction

After Plaintiffs' initial request for emergency relief was denied in both cases, Plaintiffs filed additional requests for injunctive relief.  The four motions ask the Court to (1) declare iBRAIN as the Student-Plaintiffs' proper pendency placement, (2) order DOE to fund pendency through expedited payment to iBRAIN and other providers and (3) direct DOE to pay attorney's fees.  These requests are denied because most claims are nonjusticiable, and Plaintiffs have not established irreparable harm if they do not receive injunctive relief on the justiciable claims.

As discussed above, the pendency declaration claims are either moot -- for students in Categories I, II, III and IV -- or unripe -- for the Category V student, Z.C.  The expedited

payment claims of students in Category I are moot because all balances have been paid.  The

expedited payment claims of (1) students in Category III for contested payment only, (2) E.D-R.

and (3) Z.C. are unripe because the contours of DOE's payment obligations have not finalized.

Because "a court cannot resolve contested questions of law when its jurisdiction is in doubt," the

Court can only "consider the merits of the preliminary injunction" as to the expedited payment

claims of (1) students in Category II and (2) students in Category III for uncontested payment.

*Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025).[6]

The preliminary injunction motions are denied because Plaintiffs have not shown

irreparable harm, a requirement to obtain preliminary injunctive relief.  *State Farm*, 120 F.4th at

79.  "The irreparable harm requirement is the single most important prerequisite for the issuance

of a preliminary injunction."  *Id.* at 80.  "To make this showing, the moving party must

demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor

speculative, but actual and imminent, and one that cannot be remedied if a court waits until the

end of trial to resolve the harm."  *Id.*  "[I]rreparable harm exists where, but for the grant of

equitable relief, there is a substantial chance that upon final resolution of the action the parties

cannot be returned to the positions they previously occupied."  *Id.*  "[M]ere injuries in terms of

money, time and energy are not enough to establish irreparable harm."  *Id.* at 82.

Plaintiffs' alleged injuries are neither imminent nor irreparable without the relief

requested.  The difficult financial situation of iBRAIN does not necessitate closing the school or

displacing the Student-Plaintiffs.  In support of Plaintiffs' PI Motions, Plaintiffs filed

declarations of Arthur Mielnik, an iBRAIN employee.  The first declaration, dated August 16,

2024, states that iBRAIN is over a million dollars behind in rent payments across its two

---

[6] Z.C.'s claim for dispensing with the pendency-order-before-payment requirement is not raised
in the PI Motions.

locations and received a rent demand letter threatening eviction by August 28, 2024, but the attached demand letter shows a balance of $146,511.13. The declaration also states that iBRAIN incurs monthly payroll expenses over $1 million, and it "will not be able to fully cover its payroll obligations as of September 1, 2024," but that iBRAIN continues to operate as DOE payments are made. Between July and November, according to Plaintiffs' own calculations, DOE has paid $1.6 million. The second declaration, dated November 13, 2024, drops the eviction and payroll reference. It instead states that DOE's inconsistent payment practices "have created significant financial challenges for iBRAIN and [the] students' other providers," and absent "immediate relief," "iBRAIN faces closure, which would displace over sixty students with disabilities."

These conclusory statements are undercut by the fact that the Student-Plaintiffs have continued to attend iBRAIN, as evinced by the parties' March 28, 2025, update and Plaintiffs' May 7, 2025, letter. Plaintiffs' letter complains only that they "are at risk of not being paid the majority of the claimed reimbursements due for the 2024-25 school year" -- during which they attend iBRAIN -- "until *after* the school year has closed." Nor do Mielnik's statements or any other evidence supplied by Plaintiffs demonstrate how DOE's payment of balances due on students' justiciable claims would ameliorate iBRAIN's financial difficulties.

Plaintiffs argue that the automatic injunction standard under the IDEA's stay-put provision applies, and thus, no irreparable harm is required. This argument was rejected in *Mendez*. 65 F.4th at 63. The stay-put provision imposes an obligation on Defendants to ensure that the student stays in the current placement pending their administrative and judicial proceedings. 20 U.S.C. § 1415(j). If the lack of expedited payment "has jeopardized [the student's] educational placement," such as when the student is disenrolled from the school, and expedited payment would have restored the student's education access, the stay-put provision

may grant the student an automatic injunction to obtain expedited payment. *Mendez*, 65 F.4th at 63. Here, without imminent disenrollment, the automatic injunction standard does not apply.

The only authority Plaintiffs cite where such a preliminary injunction was granted, *Petties v. D.C.*, 881 F. Supp. 63 (D.D.C. 1995), is inapposite here. There, the payment delay was so notorious that numerous school providers discontinued existing placements, causing unilateral changes in students' placements. *Id.* at 68. Here, DOE may not be a model of consistency and efficiency in making payments, but the record contains no evidence that the students' educational placements have been jeopardized.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaints in both cases are **DISMISSED** in their entirety. Plaintiff L.S. is granted leave to amend to assert claims arising out of DOE's failure to fund pendency in due course. Any such second amended complaint shall be filed by June 4, 2025. By June 4, 2025, the parties shall submit a joint letter updating the status of each Student-Plaintiff and a proposed form of order consistent with this opinion reflecting any changed status.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 63 and 64 in case No. 24 Civ. 5109 and Dkt. Nos. 49 and 52 in case No. 24 Civ. 5136.

Dated: May 21, 2025
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE